## Richmond

## Horace Adrian Osborne v. Giuliana G. Osborne.

August 28, 1974.

Record No. 730893.

Present, All the Justices.

*Allen C. Goolsby, III (Paul B. Ebert; Robert F. Brooks; Hunton, Williams, Gay & Gibson,* on brief), for appellant.

*Daniel G. Grove (Philip W. Amram; Mark B. Sandground; Amram, Hahn & Sandground,* on brief), for appellee.

Cochran, J., delivered the opinion of the court.

The question presented by this appeal is whether the trial court was precluded from entering certain orders concerning alimony, child support, counsel fees and court costs because of a decree entered in proceedings in Texas by which the same litigants, Horace Adrian Osborne and his wife, Giuliana G. Osborne, were divorced.

The Osbornes were married in 1962, and two children were born of the marriage. The family lived for some years in Manassas, Prince William County, until 1970, when they moved to El Paso, Texas. In July, 1971, the parties separated, and Mrs. Osborne returned with the children to Manassas.

In February, 1972, Osborne filed a petition against his wife for divorce, on unspecified grounds, in the Court of Domestic Relations of El Paso County, Texas. Mrs. Osborne was not served with process within the State of Texas but, during that summer, through Texas counsel, she applied for and was granted a protective order concerning visitation of the children with Osborne. Subsequently advised by Texas counsel that her appearance to obtain the protective order was a general appearance, she filed a general denial to Osborne's petition.

In August, 1972, Mrs. Osborne filed a suit for an *a vinculo* divorce against her husband, alleging constructive desertion, in the Circuit Court of Prince William County, Virginia. Osborne, who was personally served with process in Virginia, filed a plea in abatement asserting that all matters in controversy should be adjudicated in the Texas court. On September 20, 1972, the trial court denied the plea in abatement and ordered that Mrs. Osborne should have temporary custody of the children and that Osborne should pay the sum of $360 per month for temporary child support. After hearing evidence, the trial court in Virginia entered, over objection, an order on October 4, 1972, directing Osborne to pay his wife $250 biweekly as child support and alimony *pendente lite*, together with a preliminary fee for her counsel.

On November 10, 1972, Mrs. Osborne's Texas counsel, having been discharged by her, withdrew from the proceedings pending in Texas, and Mrs. Osborne did not appear in person or by counsel at the trial in the Texas court held on November .13, 1972. The Texas court entered final judgment on November 15, 1972, granting Osborne an absolute divorce. The decree provided that Mrs. Osborne should have custody of the children and that Osborne should pay $125 per month for support of each child until the child attains eighteen years of age. As Texas is a community property state, the court divided the community property between the parties except for the home in Manassas, over which the Texas court had no jurisdiction. Specifically, the court gave Osborne all personal property in his possession, a 1969 automobile, and money in his bank accounts, and gave Mrs.

Osborne all personal property in her possession, including furniture and furnishings in Virginia, a 1967 automobile, and money in her bank accounts. The Texas decree was silent as to alimony.

Osborne filed a second plea in abatement with the trial court on December 1, 1972, seeking dismissal of the Virginia cause on the ground that all matters in controversy had been settled by the November 15, 1972, final judgment of the Texas court from which no appeal had been taken. By order entered, over objection, on March 7, 1973, the trial court overruled Osborne's plea in abatement and recognized the Texas decree of divorce as a dissolution of the Osbornes' marriage, but asserted continuing jurisdiction over matters of child custody, child support, and alimony. The decree awarded Mrs. Osborne custody of the children and a judgment against Osborne in the sum of $1,000 for arrearages in *pendente lite* payments previously ordered, and directed Osborne to pay $250 biweekly as alimony and child support, subject to the further order of the court, and an additional fee for Mrs. Osborne's counsel.

The trial court, after considering financial statements of the parties and hearing evidence *ore tenus*, entered a final decree on June 20, 1973, awarding Mrs. Osborne $200 per month permanent alimony, $400 per month child support, judgment against Osborne in the sum of $575 for arrearages, and additional counsel fees.

Osborne has abandoned his assignments of error relating to orders of the trial court entered prior to the final judgment of the Texas court of November 15, 1972. He has also incorrectly set forth and rephrased in his opening brief the assignments of error upon which he relies. Nevertheless, the assignments of error adequately cover Osborne's principal contention that the trial court erred in failing to honor the final decree of the Texas court by thereafter ordering him to pay alimony and child support. *See* Rule 5:42, Rules of Court.

Under the United States Constitution and federal [2] and

---

[1] Article IV, Section 1, provides in pertinent part:

"Full Faith and Credit shall be given in each State to the . . . judicial proceedings of every other State. . . ."

[2] 28 USC § 1738 provides in pertinent part:

"[J]udicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of [the] State . . . from which they are taken."

Virginia statutes [3] Mrs. Osborne was barred from relitigating in Virginia matters properly adjudicated by the Texas court. The constitutional mandate, as implemented by Congress, requires every state to give a foreign judgment at least the *res judicata* effect which the judgment would be accorded in the state which entered it. *Durfee* v. *Duke*, 375 U.S. 106, 109 (1963). In *Barber* v. *Barber*, 323 U.S. 77 (1944), the Supreme Court held that Tennessee was required to give effect to a North Carolina judgment, not subject to modification in North Carolina, for arrearages in alimony payments. *See McKeel* v. *McKeel*, 185 Va. 108, 112-13, 37 S.E.2d 746, 748-49 (1946). Subject to rare exceptions, the full faith and credit rule applies even though the sister state's judgment reflects policies hostile to those of the forum state. *Estin* v. *Estin*, 334 U.S. 541, 546 (1948); *Magnolia Petroleum Co.* v. *Hunt*, 320 U.S. 430, 438 (1943); *Williams* v. *State of North Carolina*, 317 U.S. 287, 294-95 (1942).

In considering the applicability of the principle of full faith and credit to the Texas decree it is necessary to determine whether the division of property under the Texas statutes protects the same right that permanent alimony protects under Virginia law. If the same right is protected in each instance full faith and credit bars a litigant who, having vindicated his right in one state, seeks a second remedy, though different in kind or measure, in another state. *Magnolia Petroleum Co.* v. *Hunt, supra.*

In Virginia, a wife has a right to support by her husband, a right which, if the wife is not at fault, survives a divorce *a vinculo*. Under Virginia law, the wife's right to support after divorce is protected by our provisions for permanent alimony. Code §§ 20-107-09. *See Eaton* v. *Davis*, 176 Va. 330, 338, 10 S.E.2d 893, 897 (1940).

The Texas decree was silent as to alimony because Texas law and public policy do not permit alimony for the wife after a final decree of divorce. *See Brunell* v. *Brunell*, 494 S.W.2d 621 (Tex. Civ. App., 1973); *Francis* v. *Francis*, 412 S.W.2d 29 (Tex. Sup. 1967); V.C.T.A. Family Code, §§ 3.59 and 3.63. There is no such

---

[3] Code § 8-271 provides in pertinent part:

"The . . . judicial proceedings of any court . . . of any state . . . shall have such faith and credit given to them in every court within this State, as they have in the courts of the state . . . whence such records come."

thing in Texas as permanent alimony. *Bond* v. *Bond*, 41 Tex. Civ. App. 129, 90 S.W. 1128 (1905). However, although alimony cannot be decreed upon the dissolution of marriage, Texas has long maintained that ample provision is made for the support of the wife by the division of property. *See Pape* v. *Pape*, 13 Tex. Civ. App. 99, 35 S.W. 479 (1896).

The Texas statute dealing with the division of property upon dissolution of a marriage provides that the court shall divide the "estate of the parties in a manner that the court shall deem just and right." V.C.T.A. Family Code, § 3.63. This statute does not require an equal division. *Roberson* v. *Roberson*, 420 S.W.2d 495 (Tex. Civ. App., 1967, writ ref'd n.r.e.). In making the division, the court may consider, "among other things, the age and physical condition of the parties, their relative need for future support, fault in breaking up the marriage, benefits the innocent spouse would have received from a continuation of the marriage, the size of the estate and the relative abilities of the parties." *Pickitt* v. *Pickitt*, 401 S.W.2d 846, 848 (Tex. Civ. App., 1966). Thus, the court may award all personal property to either spouse and may subject the income, rents, or revenues from all real estate to the support of either or both. *Hedtke* v. *Hedtke*, 112 Tex. 404, 408-09, 248 S.W. 21, 22 (1923).

Virginia permits a personal judgment requiring permanent alimony payments out of the husband's future income; Texas prohibits that particular source of support, but provides others (*e.g.*, the community property or the income derived from the husband's separate property). Unlike alimony, a wife's interest in community property is not forfeited even though her fault brings about a divorce. And a wife without fault divorced in a community property state may be left without adequate means of support even though her former husband has a good income. Our method vests discretionary power in courts to award alimony when justified and to modify awards of alimony to meet changed circumstances, while Texas decrees are necessarily limited to provisions from the community property and income from the husband's separate property. Virginia's alimony is uncertain in duration and ceases entirely upon the death of either husband or wife, *Durrett* v. *Durrett*, 204 Va. 59, 129 S.E.2d 50 (1963), or upon remarriage of the wife. Code §§ 20-109 (Cum. Supp. 1974) and 20-110 (Repl. Vol. 1960). On the contrary, the division of property in Texas is final and unconditional.

Despite the significant distinctions in the assets that can be used, the flexibility available, and the duration of the award, we conclude that the Texas scheme of economic adjustment upon the dissolution of a marriage seeks to protect the same right as does the award of alimony in Virginia. Texas had personal jurisdiction over Mrs. Osborne and gave her the opportunity to litigate this right. The Texas decree was conclusive and unmodifiable, and if Mrs. Osborne should attempt to raise again in a Texas court the issue of the property division or of support for herself, she would be barred by the principle of *res judicata. See Ladd* v. *Ladd,* 402 S.W.2d 940 (Tex. Civ. App., 1966, writ ref'd n.r.e.). Since the Texas courts would not permit relitigation of the issue of support, we are bound by the Texas decision and may not permit Mrs. Osborne to relitigate in Virginia a right already determined by the Texas court.

Mrs. Osborne relies on *Isaacs* v. *Isaacs,* 115 Va. 562, 79 S.E. 1072 (1913). In that case a wife was awarded by a Virginia court a divorce *a mensa et thoro* and permanent alimony. Subsequently, her husband obtained an absolute divorce from her in Kentucky and sought to interpose the Kentucky decree as a bar to enforcement of the wife's lien on his Virginia real estate for alimony payments decreed by the Virginia court. Both the Virginia and Kentucky courts had personal jurisdiction over the parties, but the Virginia court had awarded permanent alimony before the Kentucky proceeding had been instituted. We recognized the Kentucky decree as a final dissolution of the marriage but declined to give it effect as to termination of the lien for past and future installments of alimony payable under the Virginia decree. *See also Isaacs* v. *Isaacs,* 117 Va. 730, 86 S.E. 105 (1915).

The "divisible divorce" concept, under which full faith and credit is given to a foreign divorce decree as to dissolution of the marriage but not as to property or support rights, when the decree is inconsistent with separate maintenance orders entered in the forum state, is applicable when the foreign divorce has been obtained in *ex parte* proceedings. *See Vanderbilt* v. *Vanderbilt,* 354 U.S. 416 (1957); *Kreiger* v. *Kreiger,* 334 U.S. 555 (1948); *Estin* v. *Estin, supra.* The general rule, supported by the great weight of authority, is that full faith and credit will be accorded a foreign divorce decree as to property and support rights, as well as to marital status, where the divorce court had

personal jurisdiction over the parties. *Newgard* v. *Newgard*, 111 N.J. Super. 515, 269 A.2d 401 (1970); *Nowell* v. *Nowell*, 157 Conn. 470, 254 A.2d 889 (1969), *cert. denied*, 396 U.S. 844 (1969). *See* Annot., 49 A.L.R.3d 1266 (1973); Annot., 1 A.L.R.2d 1423 (1948); 24 Am. Jur. 2d, *Divorce and Separation*, § 953, p. 1089 (1966).[4] Indeed, some jurisdictions have rejected the "divisible divorce" doctrine and have given full faith and credit for all purposes to *ex parte* foreign divorce decrees. *See Brewster* v. *Brewster*, 204 Md. 501, 105 A.2d 232 (1954).

Whether our views expressed in the two cases of *Isaacs* v. *Isaacs*, *supra*, are contrary to the general rule and should be reconsidered need not be determined at this time. The present case is distinguishable from those cases. Here, the Texas final decree of divorce was entered before, rather than after, permanent alimony was decreed by the trial court in Virginia. All awards of alimony made by the trial court before entry of the final decree in Texas were merely temporary awards *pendente lite* authorized by Code § 20-103.

*Cooper* v. *Cooper*, 314 Ky. 413, 234 S.W.2d 658 (1950), *cert. denied*, 344 U.S. 876 (1953), also relied upon by Mrs. Osborne, is inapposite. There, the Kentucky court held that a Florida divorce decree, silent as to alimony, would not preclude the Kentucky court from awarding alimony. The Kentucky court found that the Florida decree would not bar the wife from subsequently applying for alimony in Florida, and it therefore declined to give greater force and effect to the Florida decree in Kentucky than the decree had in Florida.

For the reasons stated we conclude that the Texas decree entered November 15, 1972, must be given full faith and credit, not only as to Mrs. Osborne's marital status, but also as to her rights to property and support for herself. It follows that all temporary alimony decreed by the trial court must be terminated as of the date the Texas decree became final, and that no permanent alimony could be awarded thereafter. This will require a determination by the trial court of the portions of the *pendente lite* payments made after the cut-off date that were alimony rather than child support. The final decree of June 20,

---

[4] In Ohio intermediate appellate courts have declined to follow this general rule. *Manney* v. *Manney*, 42 Ohio L. Abs. 153, 59 N.E.2d 755 (1944); *Metzger* v. *Metzger*, 32 Ohio App. 202, 167 N.E. 690 (1929).

1973, must be reversed, and the cause remanded for a determination of the amount, if any, of alimony overpaid by Osborne, for which he will be entitled either to refund or to credit on the judgments heretofore entered against him for arrearages.

■ Osborne further argues that the trial court had no power, in the absence of changed circumstances, to increase the amount of child support beyond that ordered in the Texas decree. We do not agree.

The Virginia court had jurisdiction of the parties to enter decrees awarding custody of the children and child support *pendente lite* to Mrs. Osborne. These decrees were entered before the divorce decree was entered by the Texas court, but, so far as the record shows, the Texas court in uncontested proceedings gave no consideration or effect to the Virginia decrees and made no finding of a change in circumstances if, indeed, the Virginia decrees were brought to the attention of the Texas court. Throughout the litigation in both states the children resided with their mother in Virginia, and the Virginia court never surrendered jurisdiction over them. After making the *pendente lite* awards the trial court subsequently heard evidence in adversary proceedings and determined the proper final award of child support.

Under Virginia law our courts have continuing jurisdiction to modify, as circumstances may require, child support awards previously made by those courts in divorce proceedings. Code § 20-108 (Repl. Vol. 1960); *Barnes* v. *Craig*, 202 Va. 229, 117 S.E.2d 63 (1960). The trial court did not grant a divorce to the parties but, in divorce proceedings instituted under Code § 20-107 (Repl. Vol. 1960),[5] it gave effect to the Texas divorce decree as a dissolution of the marriage and made a final award of child support. This action was proper under the provisions of Code § 20-107 (Repl. Vol. 1960).

---

[5] Section 20-107 provides in pertinent part:

"Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor children, . . ."

We hold that a Virginia court, having jurisdiction of the parties and of their minor children, may make a child support award without being bound by any previous award that may have been made in another state. We are not required to give full faith and credit to child custody decrees of another state, *Ford* v. *Ford*, 371 U.S. 187, 194 (1962), and *Falco* v. *Grills*, 209 Va. 115, 123-25, 161 S.E.2d 713, 719-20 (1968), and we decline to give full faith and credit to a child support order entered in another state in uncontested proceedings. We further hold that no proof of change of circumstances is required before the Virginia court may make a child support award that differs from the award made in the other state. The welfare of the infant always being paramount, our courts may make independent determinations of proper payments to be made for the child's support. We find no error in this ruling of the trial court or in its award to Mrs. Osborne of counsel fees and court costs.

*Affirmed in part; reversed in part; and remanded.*