**RESORTS INTERNATIONAL HOTEL, INC.**

v.

**Joseph J. AGRESTA.**

**Civ. A. No. 83–0215–R.**

United States District Court, E.D. Virginia, Richmond Division.

Aug. 5, 1983.

Charles F. Witthoefft, Michael P. Falzone, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for plaintiff.

### OPINION AND ORDER

WARRINER, District Judge.

Plaintiff's amended complaint, filed 30 June 1983, alleges that during May and June, 1982, defendant came to plaintiff's place of business in Atlantic City, New Jersey, and engaged in and lost a substantial sum of money in games of chance. To pay the loss defendant drew a series of three drafts payable to plaintiff on the account of one Edward Hamway in a Philadelphia, Pennsylvania, bank. The drafts were dishonored by the bank and returned to the plaintiff. Defendant thereupon executed a note in payment of the loss providing that defendant would pay plaintiff the principal sum of $10,000 together with eight percent (8%) interest. The note authorized defendant's attorney-in-fact, Benjamin B. Wool-

---

dridge, to confess judgment against defendant in the amount of $10,000 (face value of the note), plus interest, costs, and collection charges. Plaintiffs allege that the note plus interest and collection charges is now due and owing from defendant to plaintiff. Plaintiff claims that demand has been made upon defendant to honor the obligation under the note, but that defendant has failed and refused to pay plaintiff the sum due. Plaintiff has moved the Court to enter default under Rule 55(a), Fed.R.Civ.P., against defendant for failure to plead or otherwise defend against the complaint. For the reasons set forth herein the action will be dismissed.

Plaintiff, Resorts International Hotel, Inc., is a New Jersey corporation with its principal place of business in the State of New Jersey. Plaintiff does not transact business in the Commonwealth of Virginia and has no principal place of business here. Defendant is a citizen of the Commonwealth. As the amount of the controversy exceeds $10,000, and the parties are diverse, jurisdiction is proper. The Court looks to the substantive law of the Commonwealth of Virginia for the basis of its decision.

■■■ The general rule is that contracts and liabilities recognized as valid by the laws of the State or the country where made or established may be enforced in the courts of another State or country where the action is brought unless such contract or liability is contrary to morals, public policy, or the positive law of the latter. *Parker v. Moore,* 115 F. 799 (4th Cir.1902). In New Jersey, gambling has been legalized and a contract such as that in the present case would presumably be enforceable in its courts. Thus under ordinary principles of law the debt would be enforceable in the courts of the Commonwealth. The fact that the debt is, in fact, a gambling debt removes it from the ordinary and requires the Court to determine whether it is collectible in this Court. The question is whether enforcing the debt would be contrary to the morals, public policy, or the positive law of Virginia.

In Virginia any person who illegally gambles is guilty of a Class 3 misdemeanor. *Va.Code* § 18.2–326 (1982). Persons who operate an illegal gambling enterprise are guilty of a Class 6 felony. *Va.Code* § 18.2–328 (1982). Possession of a gambling device constitutes a Class 1 misdemeanor. *Va. Code* § 18.2–331 (1982). The public policy of the Commonwealth expressed through statutory provisions has been since 1740 that all promises, agreements, mortgages, and securities, and the like, where the consideration was based on wagers are void. *See Commonwealth v. Shelton,* 49 Va. (8 Gratt.) 592 (1851). The applicable Virginia statute, Va.Code § 11–14 (1982) provides that:

> All wagers, conveyances, assurances, and all contracts and securities whereof the whole or any part of the consideration be money or other valuable thing, won, laid, or bet, at any game, horse race, sport or pastime, and all such contracts to repay any money knowingly lent at the time and place of such game, race, sport, or pastime, to any person for the purpose of so gaming, betting, or wagering, or to repay any money so lent to any person who shall, at such time and place, so pay, bet, or wager, shall be utterly void.

*Id.*

The Supreme Court of Virginia has recently interpreted Va.Code § 11–14 (1982). In *Kennedy v. Annandale Boys Club, Inc.,* 221 Va. 504, 272 S.E.2d 38 (1980), plaintiff sought to recover a judgment against defendant Boys Club for $6,000. She alleged that she won the money in a bingo game conducted in Virginia at defendant club. The Supreme Court affirmed the lower court in sustaining defendant's demurrer to plaintiff's motion for judgment. The Court found that the contract was not merely voidable but utterly void, and therefore, unenforceable. The Court reasoned that even though the General Assembly had removed the "taint of illegality" from the operation of bingo games in the Commonwealth, it had not repealed or amended Va.Code § 11–14 (1982).

The Virginia Supreme Court held that the plain and unambiguous language of the statute should be construed strictly. The language makes plain that the General Assembly has not made the State court system available to unpaid gambling winners. There can be no claim made on any contract founded upon gaming. The Virginia Court concluded that the General Assembly's failure to amend Va.Code § 11–14 (1982) could not be inadvertent in light of the change in law to allow bingo in the Commonwealth. The Court also found that the legislature's refusal to permit enforcement in its courts of a gambling contract presented no constitutional question, State or federal. *Id.* 272 S.E.2d at 40.

In light of the General Assembly's express and unmistakable policy and the Virginia Supreme Court's interpretation thereof in a case much more persuasive than this one, there can be no other conclusion than that the enforcement of such a contract would be against the express public policy and positive law of the Commonwealth.

This Court is mindful of a recent opinion by another judge of this Court directly on point holding to the contrary. I am not aware of the authorities cited in that case and none are specified in the bench opinion. But the controlling law in this diversity case is that of Virginia, under the principles above mentioned, and I am not persuaded that I can ignore the plain language of Virginia's statute and the equally plain language of its Supreme Court.

Accordingly, this Court cannot, despite defendant's failure to plead or otherwise defend this case, contravene the positive law of the Commonwealth of Virginia in a diversity case and enforce a contract that offends two centuries of State policy. *See Gulf Collateral, Inc. v. Morgan*, 415 F.Supp. 319 (S.D.Ga.1976).

Accordingly, for the above reasons, the amended complaint shall be DISMISSED.

And it is so ORDERED.